UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Cause No. 4:23-CR-335 SEP |
| ) | |
| JAMES LAMBERT, ) | |
| ) | |
| Defendant. ) | |

# DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR DOWNWARD VARIANCE

Defendant James Lambert, through Attorney William Marsh, respectfully requests that this Honorable Court grant a downward variance and impose a term of 35 years (420 months), concurrent with cause numbers 2311-CR01979-01 and 23SL-CR04851-01.[1] Such a term is sufficient, but not greater than necessary to accomplish the sentencing objectives codified under 18 U.S.C. § 3553(a). In support, he states:

James Lambert is 42 years old and will not leave prison until after reaching his 70's if the Court imposes his requested 35-year term. If he survives to his release date, James will then be subject to lifetime supervision by the federal office of Probation and Parole. While the acts to which he pleaded guilty are undeniably heinous, James accepted accountability quickly and with little incident. Additionally, he has insisted that counsel refrain from the traditional retrospective approach to mitigation, and instead look forward. In other words, James Lambert is not mining

---

[1] As noted in paragraph 123 of the PSR, cause numbers 2311-CR01979-01 (St. Charles county) and 23SL-CR04851-01 (St. Louis county) both encompass relevant conduct to the instant offense. Under U.S.S.G. §5G1.3(c), Mr. Lambert's federal sentence must run concurrently with those state charges.

1

his history for explanations or excuses—except to the extent that such information may be useful in helping him and others understand the genesis of the compulsions underlying the type of conduct at issue in this case. James does not want to diminish the severity of his acts. Rather, he wants to atone for them by minimizing the stress and harm that the adjudication process presents to his victims, demonstrate his extreme remorse, and convey his commitment to vulnerably and objectively understanding—and eradicating—the underlying psychological issues that compel sexual crimes against children.

When James first learned that his years of criminal conduct had been disclosed to various relatives, his first impulse was, admittedly, to flee to his parents' home in Momence, Illinois. Upon doing so, he reached out to counsel, who explained the grave consequences that the accusations he was facing would carry if he were to be adjudicated for them. Rather than attempt to deny his actions—even at this very early stage, before charges were ever filed—James took accountability for his conduct and quickly turned the discussion toward the process of self-surrender. Understandably, he was both terrified and distraught. As a result, the initial psychological shock of rectifying his grave new reality led to a mental break outside his parents' home. Police responded and took James into custody, which led to his immediate commitment inside a psychiatric facility. After stabilizing, James was transferred to the custody of the Momence police, where he waived extradition and was transported to the first jurisdiction to file charges, St. Charles county. Immediately upon arrival, James—already adopting a realistic view—waived his right to a bond hearing. Thus, from the start, he spared his victims and their parents from the re-traumatization that any court appearances would entail.

Authorities served James' St. Charles warrant on June 16, 2023. Eleven days later, he waived his right to a bond hearing. He was then brought to federal court via writ on July 6,

2

2023. During his initial appearance, James again waived his right to a detention hearing—accepting without challenge the reality that he would remain confined and again sparing his victims and their family members the need to appear in court and/or make an official statement. From that point forward, Mr. Lambert urged counsel to resolve his case in the most expeditious manner possible. From the beginning, James' top priority—and counsel means this in the most sincere manner possible, having spent hours upon hours with Mr. Lambert—has been to spare his victims any further harm. He is truly distraught over the drastic toll that his actions have taken on the victims and laments the lifetime of healing that they will need to endure.

James' posture and approach to this case is unique. As the Court is surely aware, cases involving sexual misconduct with children are prone to lingering. The road to accountability is often fraught, especially for people who face accusations of this nature. This is attributable to both the severity of the sanctions and the degree of stigma that attaches to such conduct. Even when the evidence is overwhelming, counsel's experience with similarly situated defendants is that the impulse to explore any and all avenues of deniability—whether plausible or not—is too strong to avoid. James has resisted that impulse from day one. By doing so, he has spared a number of injured parties from the hardship of contentious litigation and/or a protracted adjudication process.[2] James' quick accountability ought to be worth something, and he urges the Court to take it into account as It determines an appropriate sentence.

In addition to his unprotracted acceptance of responsibility, the depth and sincerity of James' remorse also separates him out from other people charged with similar crimes.

---

[2] As noted in the Court's docket entries, Mr. Lambert waived pretrial motions after only two requests for continuance—well below the typical number of requests made in similar cases. Additionally, the two requests he did make were filed at the behest of counsel, who insisted that he have adequate time to assess the case given Mr. Lambert's significant exposure. Given his July 2, 2024 sentencing date—extended only because counsel was recently in trial on another matter—he will have adjudicated his case in less than a year from the date of his initial appearance.

3

Contrition in the criminal justice setting is often perfunctory—expressed because it should be, not because it is actually felt. But James DOES feel it, on a deep and visceral level. The undersigned can state this with complete confidence, as he has seen Mr. Lambert react to both the discovery in this case and the myriad victim impact statements. Counsel witnessed James sob while watching a Children's Advocacy Center (CAC) interview with the older of his two victims. The tears were heaviest when James heard him describe the psychological toll of his actions. Upon reading the victim impact statements, he was brought to tears again. Once more, James has carried this remorse from the moment he reached out to the undersigned roughly one year ago, and the vulnerability and sincerity of its expression has been quite remarkable. This is not to say that contrition excuses James' conduct, but the Court must know that he truly does feel terrible for what he has done. And not because of the serious consequences it carries for him, but because he has committed irreparable harm to innocent parties.

James' sincere remorse is accompanied by a sincere desire for, and commitment to rehabilitation. In full candor, counsel has found his representation of Mr. Lambert to be quite insightful, as it has provided an atypical lens into the mind of people who commit these types of offenses. While sex offenders typically tend to avoid conversations about the nature and cause of their compulsions, James has been open and forthright. While unable to identify the genesis of his disorder, James admits it has afflicted him as long as he can remember. He does not believe that it developed in response to an external event or series of events, but that it is innate. Of course, this is not to say that James holds himself unaccountable. To the contrary, he is attempting to foster self-awareness so that he can eradicate any illicit compulsions he may have.

James has also spoken openly about the challenges of living with an affliction that is so stigmatized that seeking help outside of the criminal legal system is not a realistic endeavor.

4

With that said, the commencement of these charges against him have, paradoxically, provided a sense of relief. James no longer has to hide his illness—it is out there. And he now has the luxury of openly addressing it with trained clinicians. Given that fact, James' getting caught has provided him with a strange sense of relief—the relief that he no longer has to hide his illness, and the relief that he can talk about it with trained professionals. He is eager to undergo the process of honest self-examination and rehabilitation, and will be requesting placement in a facility that is tailored to meet those particular needs.

 Under the parties' plea agreement, Mr. Lambert is free to request a sentence of 30 years. In the spirit of maintaining his realistic attitude and appreciation for the absolute gravity of his conduct, James is not going to insult the Court or any aggrieved parties by requesting the minimum allowable term. Three-and-a-half decades is almost inconceivable—especially for someone who has never received so much as a traffic ticket. Given his absence of criminal history, his swift and practical adjudication of the case, the sincerity of his remorse, and his commitment to understanding and eradicating the psychological issues compelling his conduct, Mr. Lambert respectfully urges the Court to grant the substantial 35-year sentence he is requesting. James assures the Court that he will use this time to atone for his misdeeds, to identify and fix the disordered thinking that compelled them, and hopefully provide insights that may be used to rehabilitate people with similar afflictions. James Lambert is not evil, he is sick. And he is committed to fixing himself. Three-and-a-half decades is long enough for him to accomplish this task, especially when one considers that he will emerge from such a term as an old man, subject to lifetime supervision along with the most stringent registration requirements available under the law.

WHEREFORE, Defendant James Lambert respectfully requests that this Honorable Court sentence him to a term of 35 years (420 months), to be served concurrently with cause numbers 2311-CR01979-01 and 23SL-CR04851-01.

Respectfully submitted,

By: /s/ William T. Marsh
William Marsh, #60906MO
1401 South Brentwood Boulevard, Suite 950
St. Louis, Missouri 63144
Phone: (314) 455-5555
Fax: (314) 727-2869
E-Mail: William.Marsh@KesslerWilliams.com

*Attorney for Defendant*

## CERTIFICATE OF SERVICE

I certify on June 22, 2024, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the Assistant United States Attorney.

/s/ William T. Marsh
William T. Marsh